SO ORDERED.

Dated: July 21, 2023

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **In re** | Chapter 7 Proceedings |
| **TIMOTHY R. GEIGER,** | Case No: 2:17-bk-14599-DPC |
| **Debtor.** | **UNDER ADVISEMENT ORDER RE MOTION FOR SANCTIONS AGAINST DEBTOR** |
| | (Not for Publication – Electronic Docketing ONLY)[1] |

Before this Court is a nasty mudslinging dispute between creditor, AccessLex Institute d/b/a Access Group ("Access"), and Timothy R. Geiger ("Debtor"). Amidst all the name calling, gratuitous hyperbole and overly lengthy pleadings, Access requests that the Court award it attorneys fees and punitive sanctions. For his part, Debtor responds in kind with largely unresponsive pleadings and a matching dose of vituperous hysteria.

After Debtor unsuccessfully moved to reopen this bankruptcy case and reinstate the automatic stay, Access filed a Motion for Sanctions Against Debtor ("Sanctions Motion").[2] Debtor filed a Response ("Debtor's Response")[3] and Access filed a Reply ("Access's Reply").[4]

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. ("Rule") 7052.
[2] DE 84. "DE" references a docket entry in bankruptcy case 2:17-bk-14599-DPC.
[3] DE 89.
[4] DE 93.

The Court held a hearing on the Sanctions Motion on May 15, 2023 (the "Hearing"). On June 5, 2023, the parties jointly filed a chronological record of all relevant documents.[5] The Court then took this matter under advisement. The Court now grants the Sanctions Motion in part and denies in part.

## I. BACKGROUND

The following facts are not in dispute.

### A. The Pre-Bankruptcy Loans

Access is a non-profit corporation that provides educational loans to students.[6] Between 2003 and 2006, Debtor borrowed money through four loans ("Student Loans") totaling $22,230 from Access to finance his law school education.[7] In 2007, Debtor borrowed an additional $15,000 from Access to finance his bar examination preparation ("Bar Loan" and collectively with Student Loans, "Loans").[8]

### B. Debtor's Work as a Lawyer

Debtor has been a licensed attorney for over 15 years. He has experience as an attorney of record in no less than 62 bankruptcy cases and adversary proceedings in this District.[9] Debtor currently works as a senior staff attorney at the Arizona Supreme Court.[10]

---

[5] DE 98.
[6] DE 84, page 2.
[7] Id.
[8] DE 98-2, Exhibit 5.
[9] DE 89, page 8.
[10] Id.

### C.    First Bankruptcy

On July 31, 2009, Debtor filed a voluntary chapter 7 bankruptcy petition ("First Bankruptcy").[11] Debtor filed a complaint against Access in the First Bankruptcy seeking a declaration that the Loans were dischargeable due to an alleged undue hardship ("Adversary Proceeding").[12] Debtor and Access settled the Adversary Proceeding and jointly filed a stipulation for judgment on December 27, 2010 ("Stipulated Judgment").[13] The Stipulated Judgment provided that Debtor's obligations to Access under the Loans were nondischargeable.[14] The Court's order stated that judgment was to be entered "in accordance with the parties' Stipulation for Judgment and that the loan balance owed to Access [] by Plaintiff plus any and all accrued and accruing interest is non-dischargeable in bankruptcy."[15] The Stipulated Judgment provided terms of repayment by Debtor to Access.[16]

### D.    State Court Judgment

After Debtor defaulted under the terms of the Stipulated Judgment, Access initiated a civil action in the Arizona Superior Court, Maricopa County ("State Court") to collect the outstanding balance on the Stipulated Judgment ("Collections Case").[17] On December 15, 2015, the State Court entered default judgment ("Default Judgment") in the Collections Case against the Debtor in the aggregate amount of $52,502.05 with interest accruing from June 15, 2015, at 4.25% per annum.[18]

---

[11] DE 98-2, Exhibit 6.
[12] DE 98-2, Exhibit 7.
[13] DE 98-2, Exhibit 10.
[14] *Id.*
[15] DE 98-2, Exhibit 11.
[16] *Id.*
[17] DE 98-2, Exhibit 13.
[18] DE 98-2, Exhibit 14.

E.      **Second Bankruptcy**

On December 11, 2017, Debtor filed a second voluntary chapter 7 bankruptcy petition ("Second Bankruptcy").[19] This Court entered a discharge order on June 1, 2018.[20]

F.      **Garnishment and Notice of Chapter 7 Discharge**

On June 23, 2020, Access filed an application for writ of garnishment in the Collections Case. Debtor then filed a Notice of Bankruptcy [Notice of Chapter 7 Discharge] ("Notice of Bankruptcy")[21] in the Collections Case which alleged that Access was listed as a creditor but did not file a claim in the Second Bankruptcy and that Debtor obtained a discharge in that case. Debtor failed to mention the Loans were held to be non-dischargeable in the First Bankruptcy. In the Collections Case, the State Court ordered a stay ("Stay Order") on all Access's collection efforts "until notice is filed informing this Court that action has been undertaken in the Bankruptcy Court that would permit post judgment actions in this matter to proceed."[22] Access then sent a demand letter to Debtor to inform him that the Stipulated Judgment specified that the Loans were nondischargeable in bankruptcy and that Access would seek sanctions if he did not inform the State Court that post-judgment actions are permitted as a matter of law and move to lift the State Court's Stay Order.[23]

On May 20, 2021, Debtor requested that the State Court lift the Stay Order for the limited purpose of permitting settlement negotiations ("Debtor's Request").[24] In response, Access sent Debtor a second demand letter directing the Debtor to amend the

---

[19] DE 98-2, Exhibit 16.
[20] DE 98-2, Exhibit 17.
[21] DE 98-2, Exhibit 20.
[22] DE 98-2, Exhibit 21.
[23] DE 98-2, Exhibit 22.
[24] DE 98-2, Exhibit 23.

Debtor's Request or file a new request indicating that the Stay Order should be unconditionally lifted.[25] Debtor did not amend the Debtor's Request or file a new request. Access then filed a response to the Debtor's Request and a cross-motion to unconditionally lift the stay.[26] At a hearing on August 4, 2021, the State Court granted Access's cross-motion to unconditionally lift the stay because "there is no longer a pending bankruptcy[.]"[27] After that hearing, the State Court entered a minute entry declining jurisdiction and leaving it to the Bankruptcy Court to determine whether the Loans "fall within the scope of the discharge issued [by] the Bankruptcy Court [in the Second Bankruptcy]."[28]

### G.    Motion to Reopen the Second Bankruptcy

Approximately one year later, Access filed another application for writ of garnishment in the Collections Case.[29]  Debtor then filed the following series of motions with this Court: a motion to reopen the Second Bankruptcy and reinstate the automatic stay ("Motion to Reopen"),  a motion to determine the dischargeability of the debt owed to Access ("Motion to Determine Dischargeability"),  a motion for an accelerated hearing regarding reinstatement of the automatic stay, a notice of removal of the state court Collections Case to the Bankruptcy Court, a supplemental motion to determine the dischargeability of the debt owed to Access,  and a motion for sanctions against Access for violation of the discharge injunction. Access filed a response in opposition to the Motion to Reopen and the Motion to Determine Dischargeability arguing that the Debtor

---

[25] DE 98-2, Exhibit 24.
[26] DE 98-2, Exhibit 25. Access never explained to this Court why it did not simply come directly to the Bankruptcy Court to enforce the Stipulated Judgment or seek clarification that the Stipulated Judgment was not discharged in the Second Bankruptcy.
[27] DE 98-2, Exhibit 26-27.
[28] DE 98-2, Exhibit 26.
[29] It was never explained to this Court why Access waited a year to renew its collection efforts.

unconditionally agreed in the Stipulated Judgment that the debts owed to Access were nondischargeable.[30]

The Court held a hearing on these matters on October 27, 2022. During the hearing, Debtor repeatedly argued that case law regarding the dischargeability of student loans had changed since the Stipulated Judgement was entered by the Court in 2009 but failed to address how the final and non-appealable Stipulated Judgment could be altered by this Court over a decade after it was entered.[31] Debtor's Motion to Reopen and Motion to Determine Dischargeability were denied and the Collections Case was remanded back to the State Court.[32] Debtor filed with this Court a motion for reconsideration.[33] Access filed a response in opposition to the motion for reconsideration.[34] Debtor filed a reply[35] but the matter was never set for hearing by Debtor.

## II. THE BRIEFS

### A. Sanctions Motion

Access requests that this Court sanction the Debtor under its inherent authority and/or 11 U.S.C. § 105(a) for the Debtor's bad faith filing of the Motion to Reopen and his filings that followed.[36] Access argues that Debtor has exhibited a history of vexatious litigation in the Collections Case by filing the Notice of Bankruptcy and seeking a determination of dischargeability when he had already, in the Stipulated Judgment, "unconditionally agree[d] that his obligation to Defendant Access [] under the Notes shall be nondischargeable."[37] Access alleges that Debtor has completely disregarded and

---

[30] DE 73.
[31] DE 75.
[32] DE 81.
[33] DE 82.
[34] DE 83.
[35] DE 88.
[36] DE 84, page 1.
[37] *Id.* at page 3.

disrespected this Court's 2009 Stipulated Judgment and that, as an experienced attorney, Debtor knows there was no legal basis to overturn a decade-old, final judgment.[38]

Access further argues that Debtor's timing in filing the Motion to Reopen was indicative of his bad faith and that Debtor filed the Motion to Reopen for the sole purpose of frustrating Access's efforts in the Collections Case.[39]

Access requests that the Debtor (i) reimburse Access for all attorneys' fees and costs incurred from the date the Motion to Reopen was filed through the date of the hearing on this Motion for Sanctions; (ii) pay sanctions to Access of $25,000; and (iii) declaring such awards nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(6).[40]

### B.      Debtor's Response

Debtor contends that he has pursued legitimate legal remedies supported by valid legal authority.[41] Debtor argues that he never misrepresented his legal position with either this Court or the State Court and has been completely honest about his position and intentions.[42] Debtor contends his stipulation to the nondischargeability of the Loans was an unconditional agreement as to only the undue hardship issue.[43] Debtor argues that he waited to seek a dischargeability determination until after Access initiated collection efforts because he was attempting to negotiate a payment plan with Access.[44] Debtor further argues that Access's substantial legal expenditures were of its own making.[45]

---

[38] *Id.* at page 12.
[39] *Id.* at page 11.
[40] *Id.* at page 12.
[41] DE 89, page 1,12.
[42] *Id.* at page 9.
[43] *Id.* at page 3.
[44] *Id.* at page 4.
[45] *Id.* at page 9.

C. **Access's Reply**

Access's Reply argues that Debtor has improperly used the Bankruptcy Code as a weapon to hinder Access's collection efforts.[46] Access notes that Debtor is not an ordinary pro se party but is a licensed attorney with substantial bankruptcy experience whose irresponsible conduct must be sanctioned.[47]

## III. JURISDICTION

This Court has jurisdiction over this bankruptcy proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and 11 U.S.C. § 105.

## IV. ISSUE PRESENTED

Whether Debtor should be sanctioned for having acted in bad faith by filing several motions seeking to determine the dischargeability of obligations where this Court entered its 2009 Stipulated Judgment finding such Loans were nondischargeable.

## V. THE COURT'S INHERENT POWER TO SANCTION

Article III Federal courts have the inherent power to discipline attorneys who appear before them.[48] The Ninth Circuit Court of Appeals has held that Bankruptcy Courts also have the inherent power to sanction.[49] A court's inherent power "can be invoked even if procedural rules exist which sanction the same conduct."[50] Such powers, however, "must be exercised with restraint and discretion."[51] In 11 U.S.C. § 105(a), Congress impliedly recognized the Bankruptcy Court's inherent power to sanction when

---

[46] DE 93, page 12.
[47] *Id.*
[48] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).
[49] *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278, 284 (9th Cir. 1996).
[50] *NASCO*, 501 U.S. at 44.
[51] *Id.*

it provided that "bankruptcy courts could issue orders necessary 'to prevent an abuse of process.'"[52]

A Bankruptcy Court may impose sanctions under the inherent power when counsel has "willfully abused judicial process or otherwise conducted litigation in bad faith."[53] "Counsel's goal to gain a tactical advantage in another case is sufficient to support a finding of bad faith and improper purpose."[54]

Parties must be accorded due process before sanctions can be imposed.[55] There are differing due process standards for compensatory and punitive sanctions. A sanction is compensatory "only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based.[56] A sanction is punitive when it goes further than "redress[ing] the wronged party for 'losses sustained'."[57]

For compensatory sanctions to be imposed under a court's inherent power, due process is accorded when the targeted party is "provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable, and [was] furthermore aware that [he] stood accused of having acted in bad faith."[58] The imposition of serious punitive sanctions, however, requires that the court "provide the same due process protections that would be available in a criminal contempt proceeding."[59] "To level that kind of separate penalty, a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof."[60] For this reason, the

---

[52] *Caldwell*, 77 F.3d at 284.
[53] *Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir. 1985) (quoting *Roadway Express v. Piper,* 447 U.S. 752, 766 (1980)).
[54] *In re BCB Contracting*, 2022 WL 1198232 at *5 (citing *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)).
[55] *NASCO*, 501 U.S. at 50.
[56] *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 106 (2017) (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 833 (1994)).
[57] *Id.* (quoting *Int'l Union*, 512 U.S. at 826-830).
[58] *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 548 (9th Cir. 2004).
[59] *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1197 (9th Cir. 2003).
[60] *Goodyear Tire*, 581 U.S. at 108 (citing *Int'l Union,* 512 U.S. at 834).

Ninth Circuit Court of Appeals has "refrained from authorizing a punitive damage award under the bankruptcy court's inherent sanction authority."[61]

## VI.    ANALYSIS

This Court is tasked with deciding whether Debtor's Motion to Reopen and subsequent filings were filed in bad faith. The facts are undisputed even if the interpretations of those facts are contested. The Debtor does not dispute the fact that this Court has the power and authority to enter sanctions under its inherent powers and under § 105 of the Bankruptcy Code. This Court now concludes that Debtor filed the Motion to Reopen and subsequent filings in bad faith.

This Court finds the notice provided to Debtor in this matter here satisfies due process concerns. Debtor received notice through the Sanctions Motion, responded to the Sanctions Motion, appeared, and provided evidence on his own behalf at the Hearing, and, together with Access, jointly filed a chronological record of all relevant documents. Debtor was accorded sufficient due process.

The Court also finds Debtor weaponized the spirit and process of the Bankruptcy Code to avoid and delay payment of his non-dischargeable obligations to Access. Debtor acted in bad faith when he filed the Motion to Reopen for the improper purpose of delaying and frustrating Access's collection efforts in the State Court Collections Case. Furthermore, Debtor's Motion to Reopen and Motion to Determine Dischargeability were baseless. This Court ordered in its 2009 Stipulated Judgment that the Loans were nondischargeable. As an attorney with 15 years of experience, Debtor knew that he had stipulated to the nondischargeability of his obligations to Access and that no basis existed to seek the determination of dischargeability of a decade-old, final and non-appealable judgment. Nevertheless, Debtor chose to file a Motion to Reopen his Second Bankruptcy

---

[61] *Knupfer*, 322 F.3d at 1197; *see also Deville*, 280 B.R. 483, 497-498 (9th Cir. B.A.P. 2002), *aff'd*, 361 F.3d 539 (9th Cir. 2004).

and seek a determination that his Loans were dischargeable in that Second Bankruptcy. Moreover, Debtor filed a motion seeking sanctions against Access for violation of the discharge in his Second Bankruptcy. These motions were meritless. Debtor knew, or should have known, when he unconditionally stipulated to the Loans being nondischargeable, that his Loans were just that—not capable of being discharged in any bankruptcy proceeding. Although the Adversary Proceeding filed by Debtor in his First Bankruptcy demanded a hardship discharge of the Loans, the judgment he stipulated to was not simply a waiver of his hardship discharge argument. The Stipulated Judgment was an unconditional, complete capitulation by the Debtor concerning the dischargeability of such Loans. Debtor's efforts to reopen the issue of the dischargeability of those debts were barred by the doctrine of claim preclusion and Debtor knew or should have known this to be the case.

This Court does not take lightly its inherent power to sanction or its inherent powers under 11 U.S.C. § 105. However, Debtor's actions demonstrate that, in the Bankruptcy Court, he has been a vexatious litigant. He has abused the judicial process in this Court. His actions in this Court were filed in a calculated effort to hinder and delay Access from collecting on its nondischargeable judgment. The Court finds that Debtor acted in bad faith in filing such pleadings and for improper purposes. This Court shall now impose compensatory sanctions on Debtor as it is empowered to do so under § 105 and under this Court's inherent powers. Access is directed to file an application for reasonable fees and costs incurred in this Court from and after Debtor's filing of his Motion to Reopen. The Court will not consider any fees incurred by Access in connection with the Collections Case. Those fees are an issue to be placed before the State Court, if at all.

The $25,000 in punitive sanctions requested by Access go beyond redressing the damage caused by Debtor's actions. This Court not only declines to impose punitive sanctions on the Debtor, it is also not within this Court's power to do so in this case.[62]

## VII.  CONCLUSION

Debtor filed his Motion to Reopen his Second Bankruptcy in bad faith and for the improper purpose of frustrating Access's collection efforts. The Debtor's motions filed thereafter were meritless. In filing these motions, Debtor wasted the resources of Access and this Court.

Debtor shall be required to pay all reasonable attorneys' fees and costs incurred by Access from the date Debtor's Motion to Reopen was filed through the filing of its fee requests. The foregoing sanctions against Debtor are nondischargeable in Debtor's bankruptcies.

**ORDERED**

**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**
Interested Parties

---

[62] *Id.*